UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVETTE MINOR,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>THE BANK OF NEW YORK MELLON, et al.,<br><br>　　　　Defendants. | No. C 19-08151 WHA<br><br>**ORDER DENYING TEMPORARY RESTRAINING ORDER** |

**INTRODUCTION**

Plaintiff filed an *ex parte* application for a temporary restraining order and order to show cause regarding a preliminary injunction. For the reasons stated herein, plaintiff's application is **DENIED**.

**STATEMENT**

Plaintiff borrowed $92,000 in 2005 and has made no payments since 2008. Nevertheless, she seeks a TRO to stop the lender from foreclosing. He or she who seeks equity must do equity. There is no equity in having stiffed the bank for over ten years. The TRO is denied. The details now follow.

In July 2005, plaintiff took out a $92,000 home equity line of credit from Countrywide Home Loans, Inc., evidenced by a promissory note and secured by a deed of trust on real

property located in Santa Rosa, California. Plaintiff took out this loan in order to make the down payment required to purchase the same Santa Rosa property.

The loan was subject to a variable interest rate that tracked the *Wall Street Journal* prime rate, an economic indicator defined by the base rate on corporate loans posted by at least 70% of the ten largest United States banks. The rate on plaintiff's loan is calculated by adding a 3.95% margin on top of the prime rate. When the prime rate moves, plaintiff's rate follows. So it went for the first few years, starting at 9.95% and reaching 11.45% by November 2007.

*Plaintiff's payments on the loan came to a permanent stop in January 2008.*

By 2010, plaintiff filed a petition for Chapter 13 bankruptcy. The pleadings reveal little about this bankruptcy. The public docket of the bankruptcy, however, reveals that plaintiff twice attempted to set the loan aside during the proposed, 60-month bankruptcy repayment plan without incurring interest. *In re Minor*, No. 10-1-1883AJ13 (Bankr. N.D. Cal.) (Judge Alan Jaroslovsky), Dkt. Nos. 45, 54. Before a plan was confirmed, however, plaintiff chose dismissal over conversion to Chapter 7 liquidation. *In re Minor*, No. 10-1-1883AJ13, Dkt. No.56.

Following the bankruptcy, plaintiff did not receive a loan statement until 2016 or 2017. She also made no payments. Eventually, defendant Specialized Loan Servicing, LLC, caught up and, by mid-2018, it took the first step towards foreclosure.

Before Specialized got too far, however, plaintiff again filed for Chapter 13 bankruptcy. Plaintiff did not mention this ongoing bankruptcy in either her amended complaint or the TRO application. Plaintiff's Chapter 13 repayment plan was confirmed this time, but only after defendants were relieved from the automatic stay under Bankruptcy Rule 4001(a)(3) in December 2018. Bankruptcy Judge Dennis Montali expressly authorized defendants to enforce their rights in the Santa Rosa property. To that end, defendants recorded a notice of default and election to sell under the deed of trust in February 2019 (Dkt. No. 6, at 15–16). The notice stated that plaintiff was in breach for nonpayment of "the installment of principal and interest which became due on 2/20/2008, and all subsequent installments, together with late charges as set forth in the note and deed of trust, advances, assessments, fees, and/or trustee fees, if any"

2

(Compl. Exh. G). The amount needed to cure the default and reinstate the loan was $78,902.54 as of February 19, 2019 (*ibid.*).

In the ensuing months, the parties negotiated a modification. Ultimately, plaintiff rejected the terms and defendants moved forward with foreclosure. Defendants recorded a notice of trustee's sale and scheduled it for November 25. The total amount due increased to $181,006.66. Ten days before the scheduled sale, plaintiff filed this action in state court and obtained a TRO shortly thereafter. The complaint alleged seven causes of action, including three fraud claims, negligence, unfair competition under California Business and Professions Code Section 17200, unfair debt collection practices under California Civil Code Section 1788; and wrongful foreclosure. The state court scheduled a hearing on the preliminary injunction for December 18.

On December 13, however, defendants removed asserting diversity jurisdiction. A week later, defendants moved to dismiss. On December 23, the day before Christmas Eve, plaintiff filed an amended complaint in federal court asserting eight claims. Plaintiff dropped the fraud claims, replaced them with contract claims, and added a claim for violation of the Federal Fair Debt Collection Practices Act. Both sides agree that the district court has removal jurisdiction.

The amended complaint raised new allegations that defendants had miscalculated the interest charged on the loan, thus invalidating the foreclosure notices and precluding the impending trustee's sale. That is, after twelve years of nonpayment, two bankruptcy proceedings challenging the loan's collection, several failed requests to modify the loan obligations, nearly a year stalling defendants' effort to foreclose, the last month spent litigating this injunction prior to removal, and just seven days before the scheduled sale, plaintiff found a new theory to prevent foreclosure.

With the amended complaint, plaintiff filed this *ex parte* application requesting a TRO. The next day, Christmas Eve, defendants filed their opposition.

# ANALYSIS

A plaintiff seeking a preliminary injunction must show that she is likely to succeed on the merits, that she is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in her favor, and that an injunction is in the public interest. *Winter v. Nat'l Res. Def. Council*, 555 U.S. 7, 20 (2008). In balancing these factors, "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of an injunction, so long as the plaintiff also shows a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2010).

### 1. PLAINTIFF HAS NOT RAISED "SERIOUS QUESTIONS" REGARDING THE CLAIMS IN HER COMPLAINT.

Plaintiff has not offered legal arguments and evidence in support of her request for a temporary restraining order that raise even serious questions going to the merits. On the merits, plaintiff's only argument is based on allegations raised for the first time one week prior to the foreclosure sale, namely, that a June 2018 loan statement and November 2019 payoff statement purportedly showed that defendants miscalculated the interest owed on the loan. Plaintiff asserts that these inaccuracies invalidate the foreclosure notices and thus the trustee's sale should be stopped. Plaintiff cites no law to support her conclusion. The argument is legally unmoored, logically flawed, and factually deficient.

Plaintiff does not expressly tie her argument to any specific claim. Nonetheless, California law recognizes that a pending foreclosure sale may be enjoined where the notice of default upon which the sale is predicated is defective. *Anolik v. EMC Mortgage Corp.*, 28 Cal. Rptr.3d 759, 774 (2005) (certified for partial publication, including the section relevant here). The governing statute is Section 2924 of California's Civil Code. *Anolik* distills the following rule from the statute and seminal California authorities:

> To be valid, a notice of default must contain at least one correct statement of a breach of an obligation the deed of trust secures. Moreover, the breach described in the notice of default must be substantial enough to authorize use of the drastic remedy of nonjudicial foreclosure. If a notice of default does not satisfy these

4

United States District Court
Northern District of California

requirements, then the notice is invalid and the lender cannot exercise the power of sale based on that notice.

*Id.* at 764.

Here, the notice of default stated plaintiff's breach as follows: "payment has not been made of [t]he installment of principal and interest which became due on 2/20/2008 and all subsequent installments, together with late charges as set forth in said note and deed of trust, advances, assessments, fees, and/or trustee fees, if any" (Compl. Exh. G). Plaintiff does not dispute that she failed to make payments of principal, interest, or late fees, nor does she assert that her nonpayment was insufficiently substantial to authorize the trustee to declare a default. The only defect she raises is the miscalculation of interest. Notably, plaintiff does not argue, let alone proffer any evidence, that she would or could have cured the default were it not for the allegedly miscalculated interest owed on the loan.

Even if we were to assume that foreclosure notices misstating the amount owed are invalid, plaintiff has not clearly established that the amounts here are misstated. The sole evidence submitted is a declaration from plaintiff that does *not* state that the amounts of default contained in the foreclosure notices were incorrect (Minor Decl. ¶¶ 23, 29). The omission is compounded by plaintiff's failure to establish what portion of amount due is attributable to interest, rather than the principal, late fees, collection costs, advances, assessments, or trustee fees. The declaration does highlight purported miscalculations of the interest rates used in the June 2018 loan statement and the November 2019 payoff statement, (Minor Decl.¶¶ 14, 31), but in so doing, relies on facts not supported by evidence—namely, historical data of the *Wall Street Journal* prime rate. Even were we to assume that the proffered rates are accurate, plaintiff does not establish what rate was used in the November 2019 payoff statement. Plaintiff says little in asserting that the applicable rate between December 2008 and December 2015 was "much lower than the interest rate claimed by SLS" without also identifying SLS's rate (Minor Decl. ¶ 31). Notably absent is any evidence, by declaration or otherwise, that the interest amounts defendants calculated affected plaintiff's willingness or ability to pay in any way.

On the current record, and particularly given the long history of this dispute in other forums, plaintiff has not met her burden to establish at least "serious questions" regarding the likelihood of success on this new defective-notice theory.

Moreover, the balance of equities does not favor plaintiff who has failed to pay a nickel on the loan since 2008.

**CONCLUSION**

For the foregoing reasons, the application for a temporary restraining order is **DENIED**. This order does *not* bless the foreclosure. If it turns out that defendants here erred in some way and that is proven at trial, defendants may *not* claim that the Court blessed the foreclosure. The Court's reasons for denying the TRO are narrow, as set forth above. Defendants proceed at their peril.

**IT IS SO ORDERED.**

Dated: December 27, 2019.

_____
WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE